things. All right, you're easy. This honorable court for the second district is now back in second. Please be seated. Here is this case on the doctor to 16 0 8 0 1. Please be expensive. Gail Strangling special representative of the state's most believe. Gentlemen, are you both ready? Proceed? Proceed when you are ready. Good morning, justices. Again, my name is Keith. I appreciate the opportunity of addressing you apart from my brief this morning. The dead man's act. Borrows evidence regarding what happened in the decedents. If the decedents of the defendant, the decedent defendants presence. Presence the defendants. Excuse me. The dead man's act narrows the definition of presence. I don't define any case law that defines presence. But. In the dictionaries, both the dictionary of kids used in school as well as the Black's Law Dictionary. They describe being within sight or call of someone. So it's not just we're present in the same room. It's you are able to see me. If we turn off the lights in here, I assume it's pitch black and we would still be in some definitions within each other's presence. But not a legal definition because you could not see me, nor could I see you. So your position is that Miss Stranger was really not in Miss Spencer's. Presence or vice versa, because Miss Stranger couldn't see what happened when Miss Spencer got out of the car. Is that what you're saying? She could see her. Obviously, she knew that she was in the car. Obviously, she knew that she got out of the car. But once she's out of the car, she could not see what caused her to fall. Were those questions asked in a deposition? Was Miss Spencer was certainly asked what caused her to fall? No. Was Miss Stranger asked in the deposition, were you able to see what caused Miss Spencer to fall? I'm going off of the record a little bit and I apologize for that. But Miss Stranger was about 90 years old at the time. If you read the entire record, I first asked if she saw this happen, upon which she answered yes. And there was a long, not sidebar, but a long discussion. I asked the same question two minutes later, five minutes later, whatever it happened to be the same thing. And again, there was a again, there was a taking her away. And then she said, I was confused. And that's basically where it was left off. She was unable to understand questions that were asked of her. So so then doesn't it doesn't it make it more doesn't it make your position more difficult? Because, you know, as your opponent argues, she could refute what is being said by Miss Spencer. And the Dead Man's Act precludes the testimony, if it could be refuted. Well, certainly I certainly can see that makes it more difficult. That's why I'm here. But as an example, if I might, if I step back and trip on my shoelace. None of you can see right now that my shoelace is tied or untied. And you could see the act of me from the waist up, coming backwards and falling. But you couldn't see what caused me to fall. That being my shoelace that's untied because that part was out of view. And the observer, let's take your example. If you were over a half a foot, I could see whether what whether your shoelace was undone or not. But then wouldn't the fact that I could refute it because I could see. Isn't that the whole point of the Dead Man's Act? That's part of the point. That's certainly part of the point. But in terms of what happened here, we never got that far. We had this confused answer, sir. But we had Miss Spencer getting out of the car. And according to the defendants, questioning of her wasn't me. They were the ones who brought up, well, she couldn't see you by virtue of the car being in the way. But how could she testify to what someone else saw or what someone else didn't see? How could who testify? How could the plaintiff testify, Miss Spencer, to what the defendant saw or couldn't see? She could not. And but the point is. That's speculation. No, it's not. What's what's speculated? There's no speculation as to what caused the fall. Miss Spencer was pretty straightforward. I mean, if Miss Spencer says Miss Stranger could not see me, she's speculating. No, she could not. No, I don't agree with that. I don't agree with that. I think that's a common occurrence for all of us. I assume all of us drive. Certainly all of us have been in cars before. And if you are the driver in the car, you're on the left side of the driver's side of the car. And someone gets out on the right side. Now, let's let me walk around. If I might just try to demonstrate it. I'm in the driver's seat of the car right now. Okay. Next to me right here is your Honor. You walk out of the car to this point. You can see me from the waist up, but you can't see my feet. What's that door was out there. You're still not going to be able to see it through the door. And what came up where she fell was where the hood of the car was. And that wasn't open, obviously. She fell after she took a couple steps forward from the passenger door. So she's in there in the area, excuse me, of the hood of the car. And that's not open. And as such, you can't see. You can certainly see somebody's, that's probably somebody's shoulders, but you're not going to be able to see their feet. You're not going to be able to see what caused her to fall. And it becomes a question of fact. We don't have to prove our entire case on a summary judgment motion. It becomes a question of fact as to what was Miss Stringer able to see or not to see. But it's a question of fact that can't be answered, which is why we have the Dead Man's Act. I mean, the question of fact that can't be answered is what did the dead person see? I mean, she can't come back from the grave and tell us what she saw. Now, if I'm sitting in a chair, I'm a little taller than a lot of people. And if I look out and I see you getting out of my car, especially if I lean over, I can see your feet. I can see you fall. I can see what's going on there. So, again, you're relying on the testimony of the plaintiff to prove what the defendant, to show what the defendant didn't see. I mean, we don't have the defendant here to tell us what she saw or what she didn't see. That's after, unless she's here in spirit alone. But I'm not required as part of my case in chief to show what the defendant was able to see. All I am required to do is prove a prima facie case and whether or not the defendant testifies to that. I've tried cases where, for whatever reason, a defendant didn't, and I'm not talking about someone or a case where a death occurred, but where a defendant didn't show up at trial. That doesn't prevent me from putting on my case. And my case, in this case, could be proven by Arlethea Spencer's testimony alone. We don't have to show. But isn't the whole point that the defendant, who's deceased, could have refuted what the plaintiff would testify to? Perhaps, perhaps not. But the presumption falls in favor of the defense, doesn't it? I don't know. That it happened where I, where the driver could have seen, might have heard, might, whatever. And so everything, like you just said, the plaintiff would testify that it occurred up by the edge of the hood or by the headlights. It does occur. Well, defendant might say, no, it didn't. There was no fall there. So my point is, it's anything that the defendant could have refuted should be barred by the Dead Man's Act. I don't think so. I think the only thing that's barred by the Dead Man's Act is what she was in a position to see. In other words. So you're saying that you can make a reasonable inference? You can make, you can certainly make an inference. I, that I agree with. But you, it's, it's not up to us to show what the defendant could have seen. Dead Man's Act only keeps out those things which you and I both saw. So, so you, so any plaintiff can circumvent the Dead Man's Act by saying that the person who died couldn't see what happened? That could be part of the testimony. It can certainly be from other evidence as well, which there's other evidence of here as well. There's no, there's no dispute that the plaintiff fell. There's no dispute which the defendant admits that as she gets out of her car, as she gets out of the defendant's car, she has to step on mats. There's no dispute that the mats, the floor underneath the mats are as slippery. And the defendant wasn't in a position to say that the plaintiff didn't, didn't slip. The defendant in this case, and I think this sort of addresses what we were saying, the defendant in making their argument, or his argument in this case, says the admission, the admissions that we've discussed, and there were certain admissions as well, failed to dispute, or failed to negate alternative explanations. It's not up to me to do. In a summary judgment motion, the only requirement for me as a plaintiff, if the defendant is moving for summary judgment, is to produce evidence that raises the question of fact. I don't have to disprove every other alternative possibility as to the cause of the accident. There may be one, there may be 10, as the defense pointed out, but in determining or in arguing or ruling on a motion for summary judgment, the purpose of the court, or one purpose of the court, is simply to determine, does a question of fact exist? What's the question of fact? The question of fact here, well there are a number, but the question of fact here is, what was the cause of the plaintiff's fall? The plaintiff says, I slipped on a mat, and the jury says, well, can we hear from the defendant? And, oh no, you can't because she's dead. First of all, as a correction, the plaintiff did not say she slipped on a mat. She said she stepped on a mat and the mat slipped. A little bit different. A little bit different. So I think that the trial court, it seems to me that they took into consideration certain things, but at the end of the day determined that you're still not going to have the ability to present enough evidence to get past the summary judgment. Well, again, I understand what you're saying, and I think you're correct that the trial court, that was their finding. I don't agree with that, but that was their finding. And, in addition to the admissions that were made by the defendant in the case, there's other evidence as well. There was an employer's first report of injury that was submitted pursuant to the Online Workers' Compensation Act. Which year did that year say? How's that coming in? It's an official document. Business record? It's a business record and an official document. It's not truth of the matter asserted. It's her representation to her employer. And the representation is kept in the normal course of business? No, the employer's first report of injury. So the employer is... The employer wasn't there, right? Or am I mistaken? No, you're correct there. You're absolutely correct. The employer is the one that's filling out the form, if you will. Based on the plaintiff's information? It doesn't have to be, but in this case, I think it was. It wasn't the defendant representing anything to the plaintiff's employer? That's correct. But in addition to that, the defendant in this case called her son-in-law and said, you know, I'm in the emergency room with Aletheia. She fell. So that's an admission. Correct me if I'm wrong. Did a lot of that, some of that evidence that you just referred to come in at the motion to reconsider? Yes. Why should the trial court have considered that evidence that could have been presented in response to civil judgment? You know, in fairness, that wouldn't be fair. And I'll tell you why I say that. The motion for summary judgment that was brought originally, basically the defendant came in and said, we don't have, you can't prove anything. Because of the Dead Names Act, you can't testify. And as such, was I required, based on that, to say, these are every single fact that we intend to prove? Or was I required just to show that there's enough to raise a question of fact? The trial court on the motion for reconsideration requested certain things. They asked for a complete transcript of a deposition, which they had been given parts of. They asked for photographs, which they were given. And I think they also asked for the employer's report of injury. So those were things that were requested by the court. And as I said, in the initial motion, I wasn't refuting anything. They hadn't put up evidence A, B, C, and D. And this is what you have to disprove. What they simply said was, made was an argument that you can't prove your case because of the Dead Names Act. And so I think it's, I'm repeating myself. I have a comment upon you to show evidence that either the Dead Names Act doesn't apply, or if in fact it does apply, I've got this other evidence out there, separate and apart from the proceedings testimony, that would prove my case or at least raise a genuine issue. That's correct. But you don't have to, if there's a hundred pages of testimony, you don't have to put in the hundred pages to prove your, you don't have, what I'm saying is you don't have to put in every... Right, your burden is lower there. Much lower. All we have to do is raise a question of fact. We don't have to give away the whole story. This is everything. We're going to prove a trial or present a trial. Summary judgment motion only requires a question of fact. It doesn't, raising a question of fact, it does not require me to prove my entire case. Counselor, you will have a chance to reply. Yes, ma'am. I'll get out of your hair. Your honor, good morning. I just want to begin by reiterating a point that I think the court has indicated it's aware of and that is that much of the evidence the plaintiff is relying on was submitted in connection with the motion to reconsider. That's not the time that you submit your evidence that you're relying on to create a genuine issue of material fact. Judge Hoffman declined to consider the evidence because there was no showing of unavailability prior to the summary judgment hearing and the standard of review for his decision not to consider the evidence as abuse of discretion. I've heard no argument or any basis for the conclusion that he abused his discretion in not considering this evidence. Furthermore, as the court's questions have implied, this evidence is not admissible in any event, much of it. For example, the employer's first report of injury is offered purely for the purpose of putting Ms. Spencer's version of what happened before the court. While that itself highlights the Dead Man's Act, you can't circumvent the what the plaintiff said. The same thing for the son-in-law's deposition, exact same thing. How about the inferences? Can, doesn't the Argueta case tell us that inferences can be made? For instance, I think what there was one, who's driving the car? Can't a reasonable inference be made that indeed or in fact that the deceased was in the driver's seat? That who? I'm sorry. The deceased was driving the car. Right. She wasn't deceased at the time. She was driving the car. Right. I'm sorry. The deceased, Mrs. Stringer, was in the driver's seat and the defendant was the passenger. No, the plaintiff was the passenger. I mean, can't, can't some reasonable inferences be made even with the Dead Man's Act? I think that's what the Argueta case tells us. Inferences of what could be seen or inferences of negligence? Inferences of, I think that Judge Hoffman said, oh, we can't even infer or we can't even say that the defendant was driving because she could refute that. And I'm saying in that situation, not that that is going to be enough evidence for Mr. Young to proceed with this case, but aren't there some instances where an inference can be made even with the Dead Man's Act? I'm not going to answer categorically no to that question, Your Honor. But I, I think that the Dead Man's Act is fairly clear in barring the plaintiff from testifying against anything that happened in the presence of the deceased. And although clearly the purpose of that prohibition is to preclude testimony that the decedent could have refuted. And therefore, if you can show that the decedent could have, could not have refuted it, then in principle, it's not fired by the Dead Man's Act. So I acknowledge all that. But even with, even with all of the statements that a deceased could make, you can parse some of that out. All of the statements in their entirety may not be barred by the Dead Man's Act. Correct? I mean, there can be some... Well, I think the statute is pretty clear that you, you cannot testify to anything that happened in the presence of the decedent. And the, the courts have engrafted this couldn't have refuted exception because that, after all, is the purpose of the act. So I don't dispute that if it can be shown that the decedent couldn't have testified, I agree, I agree. So... And that's what, that's what Mr. Young is saying. How could, in this case, the deceased have refuted the testimony when she was unable to see? Well, we don't know that she was unable to see. We have to rely on the plan's testimony for that, which is itself barred by the Dead Man's Act. And he's saying, isn't it too early in the proceedings to make that determination? Is that a question of fact? I don't think so. I mean, as Justice Burke said, it's, it's a question of fact that can never be answered because Miss Stranger is deceased. So I don't think it's a legitimate question of fact that should have precluded summary judgment. And, you know, and I'd like to, I mean, I appreciate that the court is on the Dead Man's Act and that's, that's perfectly appropriate. That does seem to be the core of the case. But I would, I would like to also point out that even if the testimony that was presented to Judge Hoffman by the plaintiff of his client is considered, even if it's not barred by the Dead Man's Act, it doesn't create a genuine issue of fact. It simply, all that she testified to, and I'd like to point out, this is a copy of what was submitted. This is right out of the record. Two pages, three pages, excuse me, of double spaced deposition excerpts from the plaintiff and the decedent. The transcripts were not provided to the court. The transcript of Spencer's deposition was never provided to the court. A transcript of Stranger's deposition was provided in connection with the motionary consider. So this is all that Judge Hoffman had were these three pages. And all that is contained in these three pages is the plaintiff testifying that she went to walk and the rug slipped. Now, is that enough to get to a jury on whether the defendant was in his reply brief? I should say her reply brief. The plaintiff makes a bald misstatement of fact, misrepresenting the record that Ms. Stranger testified that the floor was slippery and that's why the mat was there and that's why it slipped because the floor was slippery. And he says pages 20 to 22 of Ms. Stranger's deposition for that preposition. She never said the floor was slippery. She was asked, why did they have mats there? And she said, because of the moisture, tractants, snow, that sort of thing. So this testimony did not exist. She never said the floor was slippery. And this whole inference that he wants the court to draw that the mat slipped under her feet because the floor was slippery is based on something that was never testified to. All we have is a reasonable inference though. I mean, the floor is wet. I put something down. Why would I put something down if not to? Where people are generally going to walk. She didn't say the floor was wet at the time. Interestingly, she was being asked about when the mats were first placed there and it was around the time, many months, if not years before this accident, when she fell in the garage, which has nothing to do with anything. But that was what she was being asked about. And she said that there was moisture on the floor and she put the mats down. No evidence deposition. No video evidence deposition in this case. No, no. So you start with the proposition that he doesn't have to prove anything. Well, okay. I agree with that in the abstract. But what we have here is an accident that only two people saw. The plaintiff and the decedent. The decedent can't testify. The Dead Man's Act borrows the plaintiff from testifying. And so that right there justifies summary judgment. Even if you assume that the evidence offered to Judge Hoffman in opposition of the motion for summary judgment should have come in under the Dead Man's Act, that doesn't establish negligence. She slipped on the rug. That's what she said. She said, I walked forward and the rug slipped. Counsel says the reason it slipped is because the floor was slippery. There's no such testimony in the record. So, Justice Shostak, you asked about whether inferences can be drawn. That is a question, that is a subject that was taken up in this very recent case. Peacock v. Waldeck that was decided after Judge Hoffman's decision. And Justice Jorgen said he wrote the opinion. And you talked about whether inferences of negligence can be drawn in these Dead Man's Act cases. And, in fact, specifically what the court was addressing is whether an inference of negligence could be drawn from the fact of a rear-end accident where the decedent was the car in the rear. Now, a lot of members of the public would draw an inference of negligence from a rear-end accident, but the court did not in the Peacock case because there was no testimony that the plaintiff that got rear-ended was stopped. And, accordingly, the court found that inferences of other causes not involving the decedent's negligence were available, such as a sudden stop. There were several other possibilities. And on that basis alone, summary judgment was affirmed. I'm suggesting the same rationale out of control in this case. Could inferences be drawn about other causes for this lady falling that don't involve Ms. Stringer being negligent? Well, absolutely. We don't know what happened. She could have tripped over her own feet. She may have, I mean, she was a caretaker after all. Maybe she was doing something with the mats and left them in a condition where they presented a hazard to her. I don't know. The possibilities are endless. But as far as drawing an inference of negligence in this case, I don't think that an inference of negligence is available. There's no evidence at all of negligence on the part of the defendant, even if you do consider the testimony barred under the Dead Man's Act. Can you explain your interpretation of the holding in Argueta, where the trial, where the home court didn't allow testimony of the cars being stopped, that anything was received, you know, kept out allowing testimony because of the Dead Man's Act, but allowed that testimony. Right. And the follow-up to that is, is this evidence similar to that? Okay. I was hoping I wouldn't get a question about Argueta because I've had... I'll be perfectly candid with you, Your Honor. I find it hard to follow exactly what the court is saying. That's right. What's your interpretation? Something about the trees and the shrubs. Right. So, okay. So I'm the decedent in Argueta. I'm going southbound on Racine. Okay. According to the plaintiff's affidavit, the tree line that blocks my view is on 55th Street, which is in front of me. I'm approaching it. But the trees are on the right side of 55th. Okay. So presumably, they're not going to block my view of what's right in front of me, nor are they going to block my view of what's in the northbound lines of 55th. So I don't know why the decedent could not have refuted testimony about what was on that side of 55th or what was right in front of the decedent. I don't get it. I wish I could explain it. I can't. I will say this. I think the court's decision on the Dead Man's Act is distinguishable from this case because here, in that case, he didn't have the decedent testifying at all as to what he could see. In this case, we do. We have Ms. Kringer, who testified at her deposition. Yeah, I did see this lady fall. Now, there weren't any follow-up questions, so we don't know what else she saw or what she didn't see. But I think that distinguishes the case from Arguetta. And I further think that the Dead Man's Act issue in Arguetta is actually dictative, if you think about it, because the court did affirm summary judgment on the basis that, A, most of the evidence was buried by the Dead Man's Act, and B, the evidence that was not buried by the Dead Man's Act was not sufficient to create a genuine measure of material facts. So I think that reasoning applies here as well. Thank you very much. Thank you. Do you wish to reply? I will try to restrict myself to replying. I heard it said that there was no testimony that the floor was slippery. From the record itself, I'm reading as I speak, the record is page 268. The question was asked, were mats ever put down because the garage floor itself was slippery? Answer, were they put down? Question, yes. Answer, yes. The defendant said that the floor was slippery. Did she say the floor was slippery on that day, or they were put down because the floor was slippery? They were put down because it was slippery. Not because it was slippery that day, but simply because the floor itself was slippery. Her son-in-law and daughter had put down mats. How old was this defendant? At the time the deposition was taken, her late 80s. She, as is probably apparent, had a caregiver. That's what the plaintiff was doing for her. But she was driving. It's a balance. I probably shouldn't say this, but that's a scary thought. Whatever. She was driving. So the state felt she was able to have a driver's license. And you never took a video evidence deposition? The court did not allow it. It was brought up and not allowed. We were there. And I'm sorry, I don't have the dates. We were there on a status call. I brought it up and she died shortly thereafter. There had been a delay of about a year in producing her for a deposition. They had presented a doctor's report saying she can't give a deposition. So it was delayed for about a year. I took it and asked about an evidence deposition and she died. Argueta, going back to Argueta. The act only bars plaintiff from testifying to that which the defendant has observed and been able to testify to. Something she has to, if she was in a position to see. That's what Argueta stands for. We can't say what she could see or could not see. That's exactly a question of fact. And that's the sort of question of fact that should have been left up to jury to determine in this case. The defendant did admit driving. That was brought up. The first my recollection, the defendant admitted in her deposition that she was in the driver's seat at the time. She had not gotten out of the car. The plaintiff had, so the defendant's in the driver's seat. She was still in the car when this happened. And we know that because she admitted it in depth. I believe that's what she said in her deposition. And I apologize if I don't have all that down. But she had not gotten out of the car because Arlethea Spencer was going to go around the car to help get her out. Get her out. So I, even if it's not explicitly in there, that's a logical progression from the testimony that was given here. In terms of the motions that we consider, I think I've covered that, but I think the trial judge said, Judge Hoffman said, even considering all the evidence, so I'm taking, even if I take it all into account, you lose, essentially. And, you know, if this case were to go to trial, I would anticipate having a jury come in and look at, this is the drives, this is the position of the automobiles. And from that, you can make the determination yourself. And that's not, that's not dependent on what Arlethea Spencer has to say. Yeah, but if you had a jury trial, you'd have to have, you'd have to have Spencer testifying and then you'd have nobody to be able to refute what she would testify to. Well, I mean, there is a jury area. Are you saying that at the close of the case, you say that the defense says to the judge, I'm asking for a motion, you know, for verdict motion, notwithstanding the verdict or J and O B or whatever at the civil level. So is that what your position is that you should at least be able to present your case to the jury and then let the trial judge make a determination? The trial judge would have to make a determination at the close of the plaintiff's case, whether or not a prima facie case had been made out. Right. And that could consist not just of testimony from the witnesses, of course, but there's photographs, which are part of the record in this case, not very good quality. But doesn't doesn't I mean, wouldn't the dead man's act bar the photos that she would have been able and they would make a determination as to what she could see or couldn't see? No, no. They would not because there would have to be a foundation laid for presentation of the photographs to these fairly and accurately depict the garage, the position of the garage. But who's testifying is the position that that could be through the defendant himself. I can call the defendant, the administrator in this case, who lived at the house and have that defendant have the defendant testify. This is the way out of the garage. This is where the situation was in on that particular day. I'm sorry. Is that it truly and accurately portrays that which is depicted in the photograph at the time the photograph was taken? But how do you get your relevance and your materiality issue by saying that this photograph depicts it as it was at the time of this occurrence? Who's going to testify to that? And then wouldn't that also be able to be refuted by the deceased defendant? It could be refuted by by the daughter and son-in-law of the deceased. They were at the house all the time there. And it's in the same condition now as it was now or was at the time that their depositions were taken. And they would be it doesn't have to be the deceased that testifies to the condition of the garage. No, but the deceased would be the one who could have refuted that. Yes, this photograph was taken a month later. That's not what it looked like at the time. Well, but the son-in-law and daughter could say the same thing. They could say the same. In other words, they used the garage. In fact, one of the cars that is parked in the garage in one of the photographs is the son-in-law's car. So they're at the house on a very frequent basis. So so are you saying that you should have been at least able to present your case at a trial? Yes. And then if they wanted to ask for a direct verdict at that point, they could have done so. Right, right. I am. So isn't it the trial judge's job to at summary judgment to make a determination if there would even be enough to get to that point? And isn't that what Judge Hoffman did? I don't I think he did not. It's his responsibility to determine if there is a question of fact, not the outcome of the question of fact. Whereas at trial, the outcome of that question of fact has to we have to present more to go to the jury than I do to arrive at that point or to defeat summary judgment on summary judgments. Only is there a question of fact at trial? It becomes if I establish my crime of facial case. Thank you. Thank you. Thank you very much. Thank you both for your arguments. And we are in recess.